**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **Vernon Stancuna,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 3:05cv920 (JBA)** |
| | : | |
| **Town of Wallingford and** | : | |
| **William W. Dickinson, Jr.,** | : | |
| **Defendants.** | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 35]**

Plaintiff Vernon Stancuna initiated this suit pursuant to 42 U.S.C. § 1983 against the Town of Wallingford (the "Town") and its mayor William W. Dickinson, Jr., as the alleged highest policy-setting official of the Town, alleging violation of his right to equal protection under the Fourteenth Amendment of the United States Constitution in the form of selective enforcement of the Town's zoning regulations and Town Code provisions concerning storage of inoperable and/or unlicensed vehicles and operating an automotive repair business on his residential property at 85 West Dayton Hill Road in Wallingford. Compl. [Doc. # 1]. Plaintiff claims there are other similarly situated individuals who engaged in violations of the zoning regulations and/or Town Code and who did not experience the warnings, threats, harassment, and enforcement proceedings to which he claims to have been subjected. Specifically, plaintiff's Complaint alleges that "defendant Dickinson caused the Planning and Zoning Department of the Town of Wallingford to initiate

1

zoning enforcement proceedings against [him] for keeping and repairing motor vehicles at his residence," and that "as a proximate result of [Dickinson's] actions . . ., the plaintiff was subjected to warnings, threats, and harassment from the agents of the defendant Town of Wallingford because of keeping motor vehicles on his property and/or fixing his cars on his property and/or keeping a boat on his property."  Compl. ¶¶ 7-8.[1] Plaintiff contends that "[a]t the same time as the foregoing activities were taking place, defendant Dickinson resided immediately adjacent to other residents of the Town of Wallingford who kept and repaired unlicensed motor vehicles and one or more boats in front of their residences in full view of Dickinson [and that] [n]either defendant has taken any action respecting the[se] residents and conditions . . . although fully aware of such facts."  Id. ¶¶ 10-11.  Thus, plaintiff claims that "defendants have intentionally inflicted upon [him] treatment substantially different from that afforded other town residents similarly situated to him."  Id. ¶ 11.

Defendants move for summary judgment arguing: (1) plaintiff's claim against Mayor Dickinson fails because there is no evidence supporting an inference that Dickinson had any

---

[1]Although boat storage is referenced in the Complaint, plaintiff agrees that no Cease and Desist Order with respect to the storage of a boat on his Property was ever issued, nor is there any claim or evidence of any other enforcement proceedings related to plaintiff's boat storage.

personal involvement in the incidents alleged; (2) even assuming personal involvement, Dickinson is entitled to qualified immunity; (3) plaintiff's claim fails because he is unable to demonstrate any similarly situated comparators who were treated differently than plaintiff; and (4) plaintiff's claim against the Town fails because there is no evidence of a municipal policy or custom in existence which caused the alleged deprivation of plaintiff's rights.  See Def. Mot. [Doc. # 35].  For the reasons that follow, defendants' Motion will be granted.

## I.    Factual Background

The following facts are undisputed, unless otherwise noted. Plaintiff's property at 85 West Dayton Hill Road in Wallingford, Connecticut (the "Property"), see Stancuna Dep. at 12-13, is in an RU-80 zone, which is a residential zone under the Town's Zoning Regulations.  See DeVoe Aff. ¶ 6 (Wallingford Zoning Enforcement Officer).  Plaintiff also owns Stancuna Import-Export, L.L.C. which is involved in, inter alia, the import and export of personal vehicles and collectible cars, with a current business address also of 85 West Dayton Hill Road.  Stancuna Dep. at 19-20, 28.  Stancuna concedes that at least "sometimes" his mechanic would perform minor repair and/or maintenance work on vehicles at the Property.  Id. at 29-30.

The Town's Zoning Regulations, which are promulgated and enforced by the Town's Planning and Zoning Department, dictate

3

that "[m]otor vehicle repair garages" require approval of a "Special Permit" and may only be operated in commercial districts, see Zoning Reg. ¶ 4.6.D.8, although conducting minor repairs on registered vehicles for personal use by a property owner in a residential zone is not a violation of the Zoning Regulations, see DeVoe Aff. ¶ 5. Enforcement Officer DeVoe states that enforcement of zoning regulations within the Town is initiated and handled on a anonymous complaint-based system because the Town does not have sufficient personnel or resources to conduct regular inspections of every property within the Town, see DeVoe Aff. ¶¶ 24-25, and attests that "[e]ach complaint of a suspected zoning violation is investigated by the Planning and Zoning Department, and enforcement action is taken if warranted," id. ¶ 26. Plaintiff disputes these contentions by claiming that officials can and do observe properties as they drive around Town. See Pl. L.R. 56 Stmt. ¶¶ 31-32.

The Town Code, adopted by the Town Council and enforced by the Wallingford Police Department, provides that "it shall be unlawful to deposit, park, place, permit to remain, store or have any abandoned, inoperable, or unregistered motor vehicle or part thereof on any property; unless the same shall be authorized in conjunction with a lawful business thereon or unless the same shall be in an enclosed building, which motor vehicle or part thereof remains unmoved for 30 days after [written notice to the

4

owner of the property]." Town Code ¶ 214-1. "The Wallingford

Planning and Zoning Department does not handle citations for the

presence and/or keeping of unregistered motor vehicles on

property within the Town. Such citations are solely handled by

the Wallingford Police Department in accordance with § 214-1 et

seq. of the Town's Code. Complaints regarding the presence of

unregistered motor vehicles on property within the Town are

immediately referred to the Police Department for handling."

DeVoe Aff. ¶ 28. As with the zoning regulations, defendants

contend that enforcement of Town Code § 214-1 is initiated and

handled through a complaint-based system because the Police

Department does not have sufficient personnel to conduct

inspections of every property in the Town. See Haberski Aff. ¶ 6

(Police Department Officer). Plaintiff disputes the exclusivity

of this system, again claiming that "[t]he mere act of driving in

the Town is sufficient for town officials to observe the

violations . . . ." Pl. L.R. 56 Stmt. ¶ 77.[2] Haberski

---

[2] Plaintiff's speculation about the operation of the
enforcement mechanism is not shown to be based on personal
knowledge or observation, nor does he submit any other admissible
evidence to contradict the affidavit testimony of DeVoe and
Haberski. Indeed, except for the first March 23, 2004 incident
(discussed infra) which Haberski attests was instigated by his
driving by the Property on "routine patrol" and which incident
did not result in any infraction being issued against plaintiff,
the evidence shows that all enforcement action taken against
plaintiff was initiated by citizen complaint. Plaintiff
specifically admits that the February 2005 complaint, which is
the focus of this action, was lodged by a citizen complainant.

5

represents that "[e]ach complaint of a violation of Town Code §
214-1 et seq. is investigated by the Police Department, and
enforcement action is taken if warranted," Haberski Aff. ¶ 7;
plaintiff questions the interpretation of "warranted," Pl. L.R.
56 Stmt. ¶ 78.  According to Haberski, "[w]hen a complaint is
received as to the suspected presence of unregistered motor
vehicles on property within the Town, the property is inspected,
and the property owner is contacted regarding the violation.
During such contact, Code § 214-1 et seq. and corresponding
violation is explained to the property owner," "[t]he property
owner is also provided with a letter which details the
prohibition set forth in § 214-1 et seq., and is further advised
that they must bring the property into compliance, i.e. remove
the unregistered vehicles, within 30 days or an infraction ticket
will be issued."  Haberski Aff. ¶¶ 8-9.  "The status of the
property owner's compliance is reviewed by way of re-inspection
upon lapse of the 30 day time period, at which time an infraction
ticket is issued if the property owner has failed to bring the
property into compliance" and "[i]n the event that the property
owner remain[s] in non-compliance after the initial notice and an
infraction ticket is issued, the property is re-inspected
subsequent thereto to ascertain compliance.  An additional
infraction ticket is issued if the non-compliance persists."  Id.
¶¶ 10-11.

On March 23, 2004, during "routine patrol," Wallingford Police Department Officer Jason Haberski observed four vehicles appearing to be unregistered and/or inoperable on the Property. See Haberski Aff. ¶ 13; 3/24/04 Case Report. Therefore, Haberski mailed a certified letter to plaintiff explaining Town Code § 214-1. Haberski Aff. ¶ 14; 3/24/04 Case Report. Subsequently, on May 7, 2004, the Town's Planning and Zoning Department received a complaint that plaintiff was housing four to five unregistered motor vehicles on the Property, see DeVoe Aff. ¶ 8, and the Department referred the complaint to the Police Department, which handles investigation and enforcement of violations of the Town Code, id. ¶ 9. On June 15, 2004, Haberski re-inspected the Property, observed three unregistered motor vehicles, and thus issued plaintiff an infraction ticket for the Town Code violation. See Haberski Aff. ¶¶ 15-16; 6/16/04 Case Report. Then, in July 2004, another complaint was made to the Planning and Zoning Department that plaintiff was conducting automotive repair on the Property and a letter was thus sent to plaintiff advising him that such activity violated the Zoning Regulations. See 7/19/04 Letter. On August 2, 2004, Haberski again re-inspected the Property for compliance, observed four unregistered vehicles there, and thus issued plaintiff a second infraction ticket. Haberski Aff. ¶¶ 17-18; 8/2/04 Case Report. On December 23, 2004, the Planning and Zoning Department received

another complaint that plaintiff was repairing vehicles at the
Property in violation of zoning regulations and Wallingford
Zoning Enforcement Officer DeVoe then conducted a drive-by
inspection of the Property and observed several unregistered
vehicles there, one of which was in the process of being
repaired.[3]  DeVor Aff. ¶¶ 10-11.  DeVoe thus sent another
certified letter to plaintiff again advising that auto repair
activity on his Property was a violation of the zoning
regulations.  Id. ¶ 12; 12/23/04 Letter.  DeVoe copied this
letter to the Wallingford Police Department to handle the Town
Code violation of unregistered motor vehicles on plaintiff's
Property.  DeVoe Aff. ¶ 13; 12/23/04 Letter.  In response to
DeVoe's letter, on January 6, 2005, Haberski re-inspected the
Property, observed seven unregistered and/or inoperable vehicles,
and issued a written notice to plaintiff of the Town Code
violation.  Haberski Aff. ¶¶ 19-20 1/6/05 Case Report.  On
January 25, 2005, the Planning and Zoning Department received

_____

    [3] Plaintiff disputes that one of the vehicles was in the
process of being repaired by claiming "since the affiant had
articulates [sic] basis for knowing that and, therefore, the
assertion is unsupported by an admissible evidence." Pl. L.R. 56
Stmt. ¶ 17.  While the meaning of this statement is unclear, the
Court presumes that plaintiff intends to argue that DeVoe does
not articulate a basis for knowing that one of the vehicles was
in the process of being repaired.  However, DeVoe's statement is
clearly based on personal knowledge – he drove by the Property
and observed unregistered vehicles on the Property and also
observed one in the process of being repaired.  DeVoe Aff. ¶ 11.
Plaintiff does not deny that unregistered vehicles were on his
Property and that repairs were sometimes performed on them there.

another complaint that plaintiff was conducting automotive repair on the Property, and DeVoe thus sent a letter to plaintiff advising him that such activity was prohibited and must be stopped.  DeVoe Aff. ¶¶ 15-16.  Another in-person complaint was made about the repair of motor vehicles on plaintiff's Property on February 14, 2005, see id. ¶ 17; defendants contend that the complainant had originally approached the Mayor's office and had been referred to the Department by that office, see id. ¶ 17-19; Dickinson Aff. ¶ 5, from which plaintiff claims Mayor Dickinson made, initiated, or was involved in the complaint, as "[he] and/or his office forwarded complaints to zoning," see Pl. L.R. 56 Stmt. ¶ 25; Pl. Interrog. Ans. 4.  DeVoe thus conducted an inspection of the Property on February 18, 2005 and observed "a motor vehicle containing no license plates . . . up on jacks in a state of visible repair, with parts nearby on the ground, and several vehicles . . . in the front yard of the property."[4] DeVoe Aff. ¶ 20.  A cease and desist order was thus issued to plaintiff by certified mail on February 23, 2005 setting out the purported zoning violations, but plaintiff refused receipt.  Id.

---

[4] Plaintiff does not dispute that he had unregistered vehicles on his property at the time of the February 2005 complaint, that one was having repairs made to it, and that he sold some of those vehicles as part of his business.  See Stancuna Dep. at 44-45, 50-52 ("Q. Can you tell me what you did with the unregistered motor vehicles that were on your property in February of 2005, what you've done with them since? . . . Is it possible that you may have sold those vehicles?  A. It's possible, yes, I think I might have, yes.").

¶¶ 21-22; 2/23/05 Cease and Desist Order. The Order was referred

to the Town Attorney, was re-dated to March 14, 2005, and was

served on plaintiff on March 15, 2005 by a State Marshal. Id. ¶

23; 3/14/05 Cease and Desist Order.

## II.  Standard

Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with affidavits . . . show that there is no genuine

issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). A party seeking summary judgment "bears the burden of

establishing that no genuine issue of material fact exists and

that the undisputed facts establish [its] right to judgment as a

matter of law." Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir.

2002). The duty of the court is to determine whether there are

issues to be tried and, in making that determination, the Court

must draw all factual inferences in favor of the party opposing

the motion, viewing the inferences to be drawn from factual

disputes among materials such as affidavits, exhibits, and

depositions in the light most favorable to that party. Phaneuf

v. Fraikin, 448 F.3d 591, 595 (2d Cir. 2006). "If reasonable

minds could differ as to the import of the evidence . . . and if

there is any evidence in the record from any source from which a

reasonable inference in the nonmoving party's favor may be drawn,

the moving party simply cannot obtain a summary judgment." R.B.
Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal
quotation, citation, and alteration omitted).  However, "[w]here
the record taken as a whole could not lead a rational trier of
fact to find for the non-moving party, there is no genuine issue
for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586 (1986) (internal quotation and citation
omitted).

In moving for summary judgment against a party who will bear
the ultimate burden of proof at trial, the movant's burden of
establishing that there is no genuine issue of material fact in
dispute will be satisfied if he or she can point to an absence of
evidence to support an essential element of the non-moving
party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "A defendant need not prove a negative when it moves for
summary judgment on an issue that the plaintiff must prove at
trial.  It need only point to an absence of proof on plaintiff's
part, and, at that point, plaintiff must 'designate specific
facts showing that there is a genuine issue for trial.'"  Parker
v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001)
(quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential
Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir.
1994) ("[T]he moving party may obtain summary judgment by showing
that little or no evidence may be found in support of the

nonmoving party's case."). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. Id. at 586 (citations omitted).

## III. Discussion

### A. Mayor Dickinson

As noted above, defendants argue that plaintiff's claim against Mayor Dickinson fails for lack of evidence of any personal involvement by Dickinson in the events relevant to plaintiff's claim. "Section 1983 imposes liability for 'conduct which subjects, or causes to be subjected, the complainant to a deprivation of a right secured by the Constitution and laws.' 'Accordingly, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Williams v. Smith, 781 F.2d 319, 323 (2d

Cir. 1986) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976), and <u>McKinnon v. Patterson</u>, 568 F.2d 930, 936 (2d Cir. 1977)); <u>accord</u> <u>Snider v. Dylag</u>, 188 F.3d 51, 54 (2d Cir. 1999) ("[P]ersonal involvement of the defendant in the conduct that allegedly violates the plaintiff's constitutional rights is generally a prerequisite for liability under a § 1983 claim.").

Here, there is simply no evidence in the record that Dickinson initiated, made, or otherwise caused the Planning and Zoning Department to engage in zoning enforcement activity against plaintiff in February 2005 as plaintiff claims. The entirety of plaintiff's evidence concerning Dickinson's involvement is that his office directed a walk-in complainant to the Department to lodge a complaint concerning plaintiff's behavior on the Property. <u>See</u> DeVoe Aff. ¶¶ 17-18; Pl. Interrog. Ans. 4. Plaintiff admits that the February 2005 complaint was not made by Dickinson, <u>see</u> Pl. L.R. 56 Stmt. ¶ 24, nor did Dickinson initiate zoning enforcement action against plaintiff, Devoe Aff. ¶ 19; Dickinson Aff. ¶ 5, or make any police complaint or initiate police enforcement action against plaintiff with respect to Town Code violations on his property, Dickinson Aff. ¶ 6. Defendants do not dispute that the February 2005 complaint was referred from Dickinson's office, but this alone cannot establish Dickinson's personal involvement in enforcement actions taken against plaintiff and is consistent with defendants'

13

undisputed position that the Mayor's office does not handle complaints concerning zoning regulation and/or Town Code violations.  Plaintiff's speculation that the Mayor somehow had a hand in the enforcement actions taken does not demonstrate a triable claim and does not suffice to defeat summary judgment in favor of Dickinson.

Moreover, plaintiff has not adduced evidence in support of his allegation that Dickinson is the "highest policy-setting official" of the Town with respect to zoning regulations and/or Town Code violations.  See Compl. ¶ 4.  Rather, the undisputed evidence shows that the enforcement of Town zoning regulations are handled solely by the Planning and Zoning Department in accordance with those regulations, see Dickinson Aff. ¶ 7, and the enforcement of the Town Code § 214-1 et seq., with respect to the presence of unlicensed and/or inoperable motor vehicles on residential property, is handled by the Police Department, id. ¶ 8; DeVoe Aff. ¶ 28; Haberski Aff. ¶ 5; see also Conn. Gen. Stat. §§ 8-1, 8-12, Wallingford Zoning Regs. §§ 8.1-8.2 (zoning regulation enforcement); Conn. Gen. Stat. § 14-150a, Wallingford Town Code § 214-2 (Town Code enforcement).

Accordingly, absent evidence to support an inference that Dickinson was personally involved in the alleged wrongdoing, plaintiff's claim against him must be dismissed.

B.   The Town

While § 1983 does not permit municipal liability on the
basis of respondeat superior, i.e., solely because it employs a
tortfeasor, it may be held liable "if the conduct that caused the
[alleged] unconstitutional deprivation was undertaken pursuant to
a policy statement, ordinance, regulation, or decision officially
adopted and promulgated by that body's officers, . . . or
pursuant to governmental 'custom' even though such a custom has
not received formal approval through the body's official
decisionmaking channels." Jeffes v. Barnes, 208 F.3d 49, 56 (2d
Cir. 2000) (citing Monnell v. Dep't of Social Servs. of City of
N.Y., 436 U.S. 658, 690-91 (1978)).  "The municipality cannot
properly be held liable in such an action unless the injury was
inflicted by its lawmakers or by those whose edicts or acts may
fairly be said to represent official policy."  Id. (internal
quotations omitted).  Thus, "[t]he plaintiff must first prove the
existence of a municipal policy or custom in order to show that
the municipality took some action that caused his injuries. . . .
Second, the plaintiff must establish a causal connection – an
'affirmative link' – between the policy and the deprivation of
his constitutional rights." Dove v. Fordham Univ., 56 F. Supp.
2d 330, 336 (S.D.N.Y. 1999) (citing, inter alia, Vippolis v.
Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), and Okla.
City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)), aff'd sub nom.

15

Dove v. O'Hare, 210 F.3d 354 (2d Cir. 2000).[5]

Here, other than claiming that his right to equal protection
rights was violated because other similarly situated individuals
were treated differently, plaintiff articulates no "policy
statement, ordinance, regulation, or decision officially adopted
and promulgated" by the Town's officers or a Town "custom" that
resulted in the claimed deprivation. There is simply no evidence
proffered to support the existence of any policy or custom
imputable to the Town which deprived plaintiff of his equal
protection right and had the effect of singling him alone out for
zoning/Town Code enforcement action.

Finally, and in any event, there is no evidence of any

---

[5] While § 1983 municipal liability may alternatively be
grounded in a contention "not that the actions complained of were
taken pursuant to a local policy that was formally adopted or
ratified but rather that they were taken or caused by an official
whose actions represent official policy," Jeffes, 208 F.3d at 56-
57, for such a theory to succeed, "the court must determine
[that] that official had final policymaking authority in the
particular area involved," id. Here, as discussed above, while
plaintiff alleges that Mayor Dickinson had final policymaking
authority with respect to the zoning and Town Code enforcement
matters at issue, no evidence supports that contention and
plaintiff does not allege, nor does the evidence support, a
conclusion that any of the other Town officials or
representatives involved (i.e., DeVoe or Haberski) had final
policymaking authority with respect to these matters either.
Thus, plaintiff is left with his theory of "a municipal policy of
disparate treatment of the plaintiff . . . that the only two
municipal authorities charged with enforcement of the zoning
ordinances (the Wallingford Police Department and the Wallingford
Planning and Zoning Department) consistently enforced those
ordinances in an unequal manner to the plaintiff's detriment."
Pl. Opp. at 11.

constitutional violation by any Town official.  In order to establish his "class of one" equal protection claim, plaintiff must show there are similarly situated comparators to which he is prima facie identical and he must be able to prove that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

Plaintiff does not dispute that he was in violation of the Town's zoning regulations and the Town Code, see Stancuna Dep. at 29-30, 44-45, 50-52, and notwithstanding plaintiff's list of purported comparators committing similar violations, the undisputed record evidence shows that all complaints made concerning similar violations by other property owners were investigated.  Many of the alleged comparator properties listed by plaintiff did not have complaints lodged against them (DeVoe Aff. ¶¶ 32-46, 48-54, 57-58, 60-64, 66-71), some were in commercial rather than residential zones (id. ¶¶ 35, 36, 49-50, 52, 58, 72), those with complaints were/are being investigated (id. ¶¶ 30-31, 55, 59, 65, 72), some have already come into voluntary compliance (id. ¶¶ 47, 55, 59), one is the subject of a

17

pending injunction (id. ¶ 31), and one is the subject of ongoing Police Department activity (id. ¶ 72). The evidence shows that zoning regulation and Town Code enforcement action is undertaken on a complaint basis, and plaintiff submits no evidence of complaints lodged against other property owners that were not investigated, nor of complaints investigated resulting in unjustifiably different treatment.[6] Thus, plaintiff's list of proposed comparators are either not similarly situated, <u>see</u> <u>Neilson</u>, 409 F.3d at 105, or cannot be shown to have been treated differently than he was, <u>see Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (a "class of one" equal protection claim will be successful where the plaintiff shows "that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

Thus, plaintiff has failed to adduce sufficient evidence – beyond speculation and conjecture – to support his § 1983 claim against the Town.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary

---

[6] Plaintiff offers no evidence to dispute defendants' contentions that their actions with respect to his Property were either in response to complaints lodged or were follow-up actions taken with respect to those complaints due to plaintiff's failure to bring his Property into compliance and/or refusal to accept service of Cease and Desist Orders.

Judgment [Doc. # 35] is GRANTED.  The Clerk is directed to CLOSE

this case.

                              IT IS SO ORDERED.

                              _____/s/_____
                              Janet Bond Arterton
                              United States District Judge

**Dated at New Haven, Connecticut this 15th day of May, 2007.**